UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ] | Docket No. 09-CR-30001 (MAP) |
| ] | |
| - against - ] | |
| ] | |
| MICHAEL JACQUES, ] | |
| Defendant ] | |
| ] | |

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, MICHAEL JACQUES, (hereinafter "Jacques" or "Mikey") by his attorney, Lori H. Levinson, hereby submits a Sentencing Memorandum in anticipation of his sentencing before this Court on December 22, 2011.

### Procedural History

Jacques was tried before this Court and a jury on an indictment charging him with Conspiracy to Violate Civil Rights in violation of 18 USC § 241; Damage or Destruction to Religious Property in violation of 18 USC § 247 and Use of Fire to Commit a Felony in violation of 18 USC § 844, and was convicted on all three counts on April 14, 2011.

### The Presentence Report

With respect to the Presentence Report ("PSR") prepared by the Probation Department, Jacques submitted two objection letters to the Probation Department, and includes by reference the objections set forth in those letters.

### FACTORS TO CONSIDER IN FASHIONING AN APPROPRIATE SENTENCE

    I.        **Governing Legal Framework**

As this Court knows, the Sentencing Guidelines are not mandatory. United States v. Booker, 543 U.S. 220 (2005). Although holding the Guidelines are not mandatory, Booker also held that Guidelines remain in place and that district courts must "consult" the Guidelines and "take them in account" when sentencing. 543 U.S. at 264. As the Supreme Court stated in Gall v. United States, 552 U.S. 38, 50 (2007), "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" – that "should be the starting point and the initial benchmark." After Booker, the applicable guideline range should be treated merely as advisory and the sentencing court is therefore free to exercise its considerable discretion to impose a reasonable sentence outside the guidelines range that is "sufficient, but not greater than necessary" based on the factors articulated in 18 U.S.C. § 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, see id. § 3553(a)(2); "the kinds of sentences available," id. § 3553(a)(3); the Guidelines range itself, see id. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, see id. § 3553(a)(5); "the need to avoid unwarranted sentencing disparities among defendants," see id. § 3553(a)(6); and "the need to provide restitution to any victims," id. § 3553(a)(7). See Gall v. United States, 552 U.S. at 49-50 & n.6.

Applying the § 3553(a) factors to Mr. Jacques, we respectfully submit that a sentence of 120 months on his conviction under 18 U.S.C. § 844, which carries a mandatory ten year sentence, and a sentence of no more than one day for his convictions under 18 U.S.C. §§ 241 and 247, which represents a deviation from the guidelines sentence, would be sufficient, but

not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

    II.      **Argument**

Mr. Jacques respectfully suggests that the mandatory 120 months required for his conviction under 18 USC§ 844 (h) and no more than one day imprisonment for his conviction under 18 U.S.C. §§ 241 and 247 is more than sufficient to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Accordingly, Jacques respectfully submits that this Court vary from the advisory Guidelines range of 46-57 months for his convictions under 18 USC §§ 241 and 247.

**<u>The Nature And Circumstances Of The Offense And The History And Characteristics Of The Defendant</u>**

    a.  <u>The Offense</u>

This Court is fully familiar with the facts underlying the offenses of conviction, having presided over lengthy Motion to Suppress hearings and a jury trial.

There can be no denying that the offenses of conviction are extremely serious and that somebody who committed those offenses should be punished with a lengthy term of imprisonment. However, as this Court knows, Jacques has maintained his innocence from his initial appearance in the federal court system and throughout the lengthy pre-trial and trial phases of this case. When presented with the opportunity to accept responsibility for the crimes of conviction during the post-conviction/pre-sentence interview with U.S. Probation Officer Rinaldi (PSR ¶20), and fully understanding that admitting responsibility would reduce his advisory guideline range, Jacques nevertheless steadfastly maintained his innocence, and continues to do so to this very date. Moreover, as this Court also knows, Jacques' family

recently uncovered heretofore undiscovered evidence supporting his alibi that he was at home with his parents during the time period relevant to crimes. This discovery further bolsters his resolve to continue fighting his conviction through the appeals process.

      b. <u>Characteristics of the Defendant</u>

The PSR, at ¶¶ 45, 55, sets forth in detail the circumstances of Jacques' childhood up until the time of his incarceration in April, 2011 following his conviction. In addition to the information contained in the PSR, many of the letters from Jacques' family to this Court, included as exhibits to this Memorandum, provide a deeper insight into what life was like for Jacques growing up. The picture painted is not pretty. The Jacques children were subjected to what can only be characterized as unreasonably harsh treatment at the hands of their father, Michael Jacques, Sr.

In her letter, Carol Jacques speaks to how the harshest treatment was saved for Jacques, Sr.'s male child, Mikey. She describes how Mikey was never permitted to socialize with peers, and instead was kept at home to work around the house, or, when he reached the age of 13, was made to obtain jobs outside the home, only to have his pay taken by his father as rent and living expenses.

Among other sacrifices that her son was forced to make, Carol Jacques describes how Mikey wanted to go into the armed services, but that Jacques, Sr. threatened him with harsh financial consequences if he were to leave the family without his income. In addition to his father's financial threats, Mikey also gave up on joining the military because the rest of his family relied on him to provide home health care for Jacques, Sr. and did not want a non-family member to assume the daily care needed for Jacques, Sr. Similarly, when Mikey

decided that he wanted to take college courses and eventually enroll fulltime in college, his dreams were again thwarted by his fathers' control over his financial responsibilities to the household.  Had Mikey been given the opportunities that he wished to pursue, his life would likely be very different today.   Instead, faced with a controlling and violent father, he turned to drugs and alcohol, ultimately becoming addicted to prescription pain medication.  This Court is already familiar with the issue of Jacques' addiction to prescription pain medication, as it was the subject of much testimony at both the pre-trial suppression hearings and at trial, with testimony and documentary evidence establishing that Jacques was actively abusing the opiate drug Percocet during the period of time in which he was interrogated by law enforcement officers, ultimately leading to his arrest.

In addition to Carol Jacques' letter to this Court, Mikey's sisters Carol Pope and Amy and April Jacques corroborate the harsh treatment that all of the Jacques children, but particularly Mikey, were subject to by their father.   As stated by Amy Jacques in her letter, even during the period of time that Jacques was awaiting trial subject to home detention with electronic monitoring, Jacques, Sr. continued to berate and belittle him, making his pretrial detention a nightmare of daily humiliations and reproaches.  As reflected in the PSR at ¶ 55 and in Amy Jacques' and Carol Pope's letters to this Court, the period of time that Jacques remained under house arrest pending trial was "worse than jail" or "like Mikey was already in jail" because of the actions of Jacques, Sr.

Despite the verbal, mental and physical abuse Jacques faced during his life, according to the family and friends who have submitted letters to this Court on his behalf, Jacques

remained devoted to his father and worked as his home health aid from October, 2006 through the time of his arrest on the instant charges (PSR ¶64, letter of Carol Jacques).

The harshness of his upbringing, along with consideration of the fact that this thoughtful and intelligent young man was discouraged from obtaining the tools he believed necessary to move forward with a productive life are among the factors set forth in § 3553(a)(1) that this Court should take into consideration in fashioning an appropriate sentence.

   c.   <u>The Need For The Sentence Opposed</u>

      (A)   <u>To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense</u>

Notwithstanding Jacques' continuing protestations of innocence, for purposes of this Memorandum alone, Jacques concedes that if the jury's verdict was correct and he was in fact guilty of committing the crimes for which he stands before this Court for sentencing, the mandatory ten year sentence mandated by the legislature for conviction of using fire to commit a federal felony under 18 U.S.C. § 844 would adequately reflect the seriousness of the offense, would promote respect for the law and would also provide just punishment for the offense.[1]

<u>To afford adequate deterrence to criminal conduct</u>

As above, it is hard to dispute that a ten year federal prison sentence is not harsh punishment, and both individually and societally would be a strong deterrent to committing such a crime.

      (B)   <u>To protect the public from further crimes of the defendant</u>

---

[1] However, as raised in Jacques' November 4, 2011 Motion for a New Trial, if Jacques' alibi defense had been presented to the jury, and that defense had persuaded the jurors that his guilt could not be proven beyond a reasonable doubt, then ten years – or even ten days – would be far too harsh a sentence.

The public need not fear any further crimes of the defendant.  Prior to his arrest in the instant case, Jacques had only once before been involved in the criminal justice system, in a case addressed in the PSR at ¶ 37 and explained in further detail in a letter to this Court submitted by his sister Carol Pope, the alleged victim in the case.  As stated by Ms. Pope in her letter, Jacques did not perform any act of malicious damage to property.  When Jacques appeared in court to face the charges of Malicious Damage to Property and Assault by Dangerous Weapon and admitted to facts sufficient to support a finding of guilt he did so only to protect his father, who had actually committed the crimes charged.  In fact, according to Ms. Pope, Jacques' presence at the scene with his father was Jacques' attempt to prevent his father from inflicting any harm on Ms. Pope.[2]

Subsequent to his arrest on the instant charges, Jacques spent over 24 months on home detention, and has been incarcerated pending sentence since his conviction in April, 2011.  He is no longer addicted to prescription pain medication, and from the time of his arrest in January, 2009, refrained from ingesting any intoxicating substances at all.  He appreciates his sobriety, and intends to remain substance-free once he is released from incarceration.

He is now 27 years old.  Having gone through the ordeal of arrest, detention and conviction in this case, he is committed to leading a law abiding life once he is reintegrated into society.

> (C) <u>To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>

---

[2] Jacques requests that this Court make a finding on the record that he was not responsible for inflicting malicious damage to property, as such a finding will impact his classification by the Bureau of Prisons.

Because Jacques is facing a mandatory sentence of at ten years, absent a successful appeal of his conviction, there will ample time for him to pursue higher education and vocational training. He will avail himself of any opportunities presented to him during his time of incarceration.

(D)     The kinds of sentences available

Conviction of the crimes herein mandates lengthy prison sentences, both under the statutory sentencing structure and the advisory sentencing guidelines. Probation or any other alternative to incarceration are not permitted sentences for the offenses of conviction.

(E)     The need to provide restitution to any victims of the offense

Paragraph 93 of the PSR provides the amount of restitution claimed by the victims of the arson as follows: MCOGIC - $123,570.25 and Peerless Insurance Co. - $1,589,772.31. As noted in the PSR at ¶¶ 72 - 73, Jacques has assets of under $100 and has no income or expenses of his own at this time due to his incarceration. Although not noted in the PSR, his family struggles financially and is unable to pay all of their monthly expenses. Jacques accordingly expects no contribution from family members to help pay the requested restitution. It should also be noted that the lengthy period of incarceration Jacques is going to receive, and the stigma he will face upon his release from prison, significantly limit his ability to pay the required restitution. The shorter his prison sentence, the more likely he will be able to begin paying the restitution that will be ordered by this Court.

**REQUEST FOR VARIANCE FROM SENTENCING GUIDELINE RANGE**

The Sentencing Guidelines, in §5K2.0 (a)(1)(A), authorize a sentencing court to depart from the applicable sentencing range:

8

> [I]f the court finds, pursuant to 18 U.S.C. §3553(b)(1), that there exists an aggravating or mitigating circumstance; . . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines, that, in order to advance the objectives set forth the in 18 U.S.C. §3553(a)(2), should result in a sentence different from that described.

Although there can be no quarrel that the offenses of conviction are extraordinarily serious, there are factors present in this case that call for a sentence no greater than the 120 month mandatory sentence required upon conviction for 18 U.S.C. 844. These factors include:

a. The harsh circumstances of Jacques' upbringing;

b. Jacques' history of prescription pain medication abuse and addiction;

c. Jacques' lack of significant prior criminal record;

d. The fact that the ten year sentence prescribed under § 844 is mandatory;

e. That Jacques spent over two years on home detention and will not receive credit for time served from the Bureau of Prisons;

There is ample support for Jacques' submission that a sentence of 120 months, requiring a variance from the advisory sentencing guideline range for his convictions under 18 U.S.C. §§ 241 and 247, would adequately fulfill the goals of sentencing set forth in § 3553(a).

First are certain personal characteristics and circumstances that this Court may consider in fashioning an appropriate sentence. The letters of support submitted with this Memorandum as Exhibits share several themes – first, that up until the time of his incarceration on the instant charges, Jacques was subject to the sometimes violent and unusually harsh environment created by his father; second, that despite the difficulty he faced in tolerating the harsh treatment imposed by his father, he maintained a strong work ethic and

despite his addiction to prescription pain medication, was consistently able to maintain gainful employment; third, he has exhibited a strong loyalty to family and a sense of humor that helped others in the family withstand the otherwise unpleasant atmosphere in the home; and lastly, that he is not a racist and does not judge people by the color of their skin.  Letters from family and friends paint a portrait of someone very different from the racist Jacques was portrayed as at trial.  He is viewed by those who know him best as quiet, self-effacing, funny, caring and loyal.  Those who know him at all stand convinced that he did not commit the crimes of conviction.

In considering Jacques's drug dependence as a basis for a variance from the advisory sentencing guideline range, as set forth in U.S.S.G. §5H1.1.4, although not "ordinarily" a reason for a downward departure, "[i]n certain cases a downward departure may be appropriate to accomplish a specific treatment purpose."  Application Note 6 of §5C1.1 states that a departure based on the need to accomplish a specific treatment purpose "should be considered only in cases where the court finds that (A) the defendant is an abuser of narcotics . . . or suffers from a significant mental illness, and (B) the defendant's criminality is related to the treatment problem to be addressed."  Based on evidence adduced at the pretrial suppression motion hearings and at trial, this Court would be warranted in finding that addiction to prescription pain medication had plagued Jacques for several years prior to November, 2008, and that his addiction played a significant role in his ultimate confession to the crimes of conviction.  Clearly this is a young man who can greatly benefit from drug treatment during the period of time he is incarcerated.

In contemplating whether a sentence in excess of the mandatory ten years is warranted, this Court may also consider that other than the incident involving his sister Carol Pope and his father (which Ms. Pope has submitted did not involve any criminal conduct by Jacques) he has had no meaningful interaction with the criminal justice system. In fact, as noted in the PSR at ¶ 56, prior to his arrest on the instant charges, Jacques' most significant contact with the criminal justice system involved his testifying for the Commonwealth in a case in which he was the victim of a beating and robbery.

Another factor supporting Jacques' request for a variance from the advisory guideline range is the fact that Jacques spent over two years awaiting trial on home detention, with permission to leave the house only for court appearances, meetings with counsel, or for medical emergencies. The conditions of his home confinement precluded him from seeking or obtaining employment, which had a devastating effect on the family finances, as his mother became responsible for providing all income for the family for over two years. As stated in letters to this Court from family, the time Jacques spent at home awaiting trial could almost be considered worse that prison, specifically because of the continuing harsh treatment by his father. Had Jacques been held in jail pending trial, the Bureau of Prisons would award him credit for that time served; however there is no policy in the Bureau of Prisons of which counsel is aware that would award him credit for time spent in home confinement. Although living at home under strict conditions is not the equivalent of incarceration, it would be appropriate for this Court to deviate from the sentencing guidelines in consideration of the time taken away from Jacques awaiting trial, particularly in light of the fact that he was unable to work to help support his family; something he had done since the age of 13. Under the

mandatory sentencing structure for his conviction under 18 USC 844, Jacques will be required to spend ten years in prison, while his family continues to suffer the burden of the loss of his income.

It is also appropriate for this Court to take into consideration the mandatory and consecutive nature of the ten year sentence mandated by 18 U.S.C. § 844 in its calculus of whether to deviate from the advisory guideline range.[3] Clear authority in the First Circuit for such consideration is found in United States v. Webster, 54 F.3d 1 (1st Cir. 1995), a case involving a mandatory sentencing scheme similar to that found in § 844, where the Court recognized that a "sentencing court's discretion to take a mandatory sentence into account is 'long-acknowledged in the law of this Circuit and reinforced by recent Supreme Court sentencing jurisprudence.'"  The Webster Court concluded that:

> [I]n departing from a guideline sentence the district court is free to exercise its own judgment as to the pertinence, if any, of a related mandatory consecutive sentence. Should the district court think that the latter has some role along with other factors in fixing the extent of a guideline departure in a particular case, that is within its authority; and should that court decline to consider the mandatory minimum in fixing the other sentence, that too is within its authority. For this court to decide upon the ingredients of a departure one by one would go very far toward defeating discretion.

Id. at 4. See also United States v. Vidal-Reyes, 562 F.3d 43, 49 (1st Cir. 2009) ("a sentencing court can include [a mandatory term of imprisonment] datum in its sentencing calculus as long as the court grounds its rational in the complex of factors enumerated in 18 U.S.C. § 3553 (a)." (internal citation omitted)).  As further noted by the Vidal-Reyes court, "[t]he effect of a mandatory consecutive sentence clearly bears upon the §3553(a) factors to a certain extent. Most obviously, the total amount of time a defendant will spend incarcerated

---

[3] Although Jacques has submitted and stands by his objections to the PSR that 18 USC § 844 does not require the ten year sentence to run concurrently with any other sentence imposed under the advisory guidelines.

due to the effect of a mandatory consecutive sentence inherently implicates the goal of incapacitation, i.e., the need for the sentence imposed . . . to protect the public from further crimes of the defendant." Id. at 49, fn. 4.

In this case, Jacques, for all intents and purposes a first-time offender, is facing a very lengthy mandatory term of incarceration. In light of all of the § 3553 (a) factors, a variance from the advisory guideline range of 46 – 57 months for his convictions under 18 U.S.C. §§ 241 and 247 is warranted and appropriate.

## REQUEST FOR JUDICIAL RECOMMENDATION FOR DESIGNATION

Jacques respectfully requests that this Court make a judicial recommendation to the Bureau of Prisons that he be designated to serve his sentence at the closest federal institution available for several reasons. First, and most pressing, Jacques has a pending case in the Hampden County Superior Court that is scheduled for hearings on a Motion to Suppress[4] commencing on January 29, 2012 for which counsel will need access to him for purposes of preparing for this hearing. Second, Jacques requests designation to a geographically convenient place of detention for purposes of allowing him to assist in the preparation of his appeal, as contemplated by Fed.R.Crim.P. 38 (b)(2), which provides "the court may recommend to the Attorney General that the defendant be confined near the place of trial or appeal for a period of time reasonably necessary to permit the defendant to assist in preparing the appeal," and finally, as this Court knows, Jacques' father has been in failing health for a significant period of time, and his ability to visit with his son is greatly hampered by any travel

---

[4] The Motion to Suppress involves the same six-plus hour videotaped interrogation of Jacques conducted by state and federal investigators on January 15 – 16, 2009 that was the subject of extensive suppression hearings in this Court. Counsel expects this hearing to proceed in much the same way as the federal hearing, and, as of this writing, it is Jacques' intention to testify at his upcoming hearing.

required.  The Jacques family has requested that counsel make a request for a designation to a facility close enough to Hampden County to make travel feasible for the elder Jacques.

**CONCLUSION**

For all of the reasons stated above, it is respectfully submitted that this Court should impose a sentence of no more than ten years and one day incarceration.

    Respectfully submitted,
MICHAEL JACQUES

*/s/      Lori H. Levinson*
Lori H. Levinson, Esq.
**The Law Office of Lori H. Levinson, PC**
500 Main Street, Suite 2
Great Barrington, MA  01230
(413) 528-2355
(413) 528-23415 (Facsimile)

## **CERTIFICATE OF SERVICE**

      I hereby certify that the Defendant's Sentencing Memorandum filed through the ECF system will be sent electronically and by first class mail to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                          */s/   Lori H. Levinson*
                                          Lori H. Levinson